**UNITED STATES of America**

**v.**

**Nancy BUCARO, Larry Lawrence, George Jose Turner, Andre Rashid Kirby and Monica Johnson.**

**Appeal of Andre KIRBY, Appellant.**

**No. 89–3483.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) March 1, 1990.

Decided March 14, 1990.

Rehearing and Rehearing In Banc Denied April 11, 1990.

Carl Max Janavitz, Pittsburgh, Pa., for appellant.

Charles D. Sheehy, Acting U.S. Atty., Paul J. Brysh, Asst. U.S. Atty., Pittsburgh, Pa., for appellee.

---

\* Hon. Alfred J. Lechner, Jr., District Judge of the United States District Court for the District of New Jersey, sitting by designation.

Before HUTCHINSON and COWEN, Circuit Judges, and LECHNER, District Judge \*.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

In this appeal, we must decide whether a criminal defendant's prior adjudications of juvenile delinquency under Pennsylvania law can be taken into account under the federal sentencing guidelines. The guidelines expressly allow consideration of prior adjudications of juvenile delinquency. Appellant Andre Rashid Kirby (Kirby) contends that the guideline directing their consideration is a violation of the constitutional prohibition against *ex post facto* laws and, on this record, also a violation of his due process rights. We reject Kirby's arguments and hold that it was not improper for the district court to consider this criminal defendant's juvenile record in determining his sentence range under the federal guidelines. Consequently, we will affirm the sentence given by the district court.

### I.

Kirby was arrested in November 1988 and then indicted by a federal grand jury on three felony counts: under 21 U.S.C.A. § 846 for conspiracy to possess with intent to distribute and distribution of 3–methyl fentanyl (commonly known as "China white"); under 21 U.S.C.A. § 841(a)(1) for possession with intent to distribute and distribution of 3–methyl fentanyl; and under 21 U.S.C.A. § 841(a)(1) for possession with intent to distribute and distribution of cocaine. Kirby pled guilty to all three felonies. The district court sentenced him to a six-year sentence of incarceration and to concurrent five-year sentences of supervised release on the three counts. Kirby appealed to this Court.

On appeal, Kirby asserts that the district court should not have considered two adjudications of juvenile delinquency that remained on his Pennsylvania state record in

determining his sentence range under the sentencing guidelines.[1] Section 4A1.2(d)(2) of the guidelines specifically requires consideration of juvenile delinquency adjudications. Nevertheless, Kirby argues that application of this guideline section to him violates article I, section 9, clause 3 of the United States Constitution's prohibition against *ex post facto* laws as well as the Fifth Amendment's due process clause.

Kirby starts with the propositions that Pennsylvania's juvenile justice alternative to the criminal justice system is solely rehabilitative and that a necessary corollary to rehabilitation is a prohibition against the use or consideration of juvenile adjudications during any later criminal proceedings. He intimates that a suggestion to this effect during his Pennsylvania juvenile proceedings influenced the adjudications that were considered by the district court in sentencing him for these federal crimes. Thus, he argues that § 4A1.2(d)(2) of the federal guidelines is an *ex post facto* law as to him and, presumably, as to any defendant who was adjudicated a delinquent under juvenile laws similar to those in Pennsylvania before § 4A1.2(d)(2) became effective. He also says that the guideline violates due process because it allows a district court to consider prior juvenile adjudications while sentencing a criminal defendant, even if the defendant had no notice that juvenile adjudications could later be used against him in this way.

The district court had subject matter jurisdiction in Kirby's case pursuant to 18 U.S.C.A. § 3231 (West 1985). We have appellate jurisdiction over this appeal pursuant to 18 U.S.C.A. § 3742(a)(1) (West 1985). Since the question of whether Kirby's prior adjudications of juvenile delinquency can be considered during sentencing is a question of law, we exercise plenary review.

## II.

It is not disputed that the district court took Kirby's prior adjudications of juvenile delinquency into consideration during sentencing. The district court initially assigned Kirby an offense level of 25 for sentencing purposes, after taking into account the base offense level, Kirby's supervisory role in the crime and his acceptance of responsibility. By factoring in three points for Kirby's juvenile delinquency record, the court calculated his criminal history category as II. This combination of offense level and criminal history category produced a sentence range under the guidelines of 63 to 78 months. The court chose a sentence of six years, or 72 months, imprisonment. Without the juvenile delinquency adjudications, Kirby would have had a criminal history category of I and the appropriate sentence range would have been 57 to 71 months.

It is clear that under the federal sentencing guidelines, the district court properly factored Kirby's prior juvenile delinquency adjudications into its calculation of his criminal history category. Section 4A1.2(d)(2) of the guidelines states that for offenses committed before age eighteen, a sentencing court should:

(A) add 2 points [to the criminal history category calculation] for each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense;

(B) add 1 point [to the criminal history category calculation] for each adult or juvenile sentence imposed within five years of the defendant's commencement of the instant offense not covered in (A).

## III.

Kirby does not argue that the district court misapplied the instructions in this section in calculating his criminal history category. Instead, he asserts that the district court was prohibited from taking his juvenile record into consideration at all during sentencing because § 4A1.2(d)(2) is unconstitutional as applied to him. We will

---

**1.** Kirby had been adjudicated a juvenile delinquent in Pennsylvania state court for criminal conspiracy, retail theft and disorderly conduct in December 1984 and for possession of marijuana in January 1985. Kirby was sixteen years old at the time of these adjudications.

address each of the two theories Kirby advances in support of this contention.

### A.

Kirby first says that § 4A1.2(d)(2) of the guidelines is an *ex post facto* law prohibited by article I, section 9, clause 3 of the United States Constitution. He states that "[i]t is repulsive to our system of justice for a person to be penalized ... for conduct which, at the time of its occurrence, was not illegal." Brief for Appellant at 12.

■■■ Kirby's underlying premise is flawed. An *ex post facto* law is a law that punishes for conduct that was not criminal at the time it occurred or that increases the punishment for an act after the act is done. *See Fletcher v. Peck,* 10 U.S. (6 Cranch.) 87, 3 L.Ed. 162 (1810) (*ex post facto* law is one that makes an act punishable in a manner in which it was not punishable when committed); *Government of the Virgin Islands v. Civil,* 591 F.2d 255, 258 (3d Cir.1979) (same).[2] Kirby is not now being punished for his juvenile conduct. The sentence he received in federal district court was for his involvement in a conspiracy to possess and distribute China white and for his role in the distribution of cocaine. These actions were criminal at the time they were committed, and the guideline that took his prior conduct into account was in effect when he committed the criminal offenses for which the district court imposed the sentence he now attacks.[3] Kirby has not been given a sentence greater than that prescribed by law in effect at the time he committed these crimes. When

Kirby committed the federal offenses for which he was sentenced, the sentencing guidelines had already clearly provided that prior adjudications of juvenile delinquency were a relevant factor during sentencing.

Thus, there is no basis to Kirby's *ex post facto* argument. *See McDonald v. Massachusetts,* 180 U.S. 311, 312, 21 S.Ct. 389, 390, 45 L.Ed. 542 (1901) (increasing punishment for felony when defendant had prior convictions does not violate *ex post facto* clause because punishment is for the new crime only); *Schramm v. United States Parole Comm'n,* 767 F.2d 509, 512–13 (8th Cir.1985) (Parole Commission's practice of considering prior misdemeanor and felony convictions in evaluating prisoner's situation does not violate *ex post facto* clause because Commission is not increasing the punishment for the prior convictions themselves). *Cf. Gryger v. Burke,* 334 U.S. 728, 732, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683 (1948) (fact that one of the convictions entering into determination that criminal defendant was within Pennsylvania's Habitual Criminal Act occurred before the Act was passed does not make the Act invalidly retroactive, since the sentence under the Act was simply a stiffened penalty for the latest crime and not an additional penalty for the earlier crime).[4]

### B.

Kirby's second theory, that § 4A1.2(d)(2) of the guidelines violates due process because it permits the district court to increase his sentence range even though this

---

**2.** *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798), the first Supreme Court case to discuss the Constitution's *ex post facto* clause, explained that this clause proscribes, *inter alia,*

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.

*Id.* at 390 (Chase, J.).

**3.** The fact that the federal sentencing guidelines only became applicable after Kirby was adjudi-

cated a juvenile delinquent is immaterial to *ex post facto* analysis. His sentence was for criminal behavior that occurred after the guidelines became effective, not for conduct while he was a juvenile.

**4.** The actions that formed the basis for the prior adjudications of juvenile delinquency in state court- -criminal conspiracy, retail theft, disorderly conduct and possession of marijuana- -were illegal at the time they were committed. Although Pennsylvania chose to pursue adjudications of juvenile delinquency against Kirby for his misdeeds rather than initiate criminal proceedings, the state's decision does not negate the effect of his conduct while a juvenile.

is inconsistent with the nature of juvenile proceedings under Pennsylvania law, also fails. He asserts that Pennsylvania's Model Juvenile Court Act, 42 Pa.Cons.Stat.Ann. §§ 6301 *et seq.* (Purdon 1982 & Supp. 1989), provides that juvenile proceedings are not to be used against individuals in later criminal proceedings. According to Kirby, when the district court applied the federal guidelines to consider his state juvenile adjudications, it circumvented the intent of Pennsylvania's Juvenile Act and was so inconsistent with the assurances he was given during his juvenile proceedings that his consent to those adjudications was not knowingly given.[5] He argues that since the federal guidelines were not in effect during the juvenile proceedings, he could not have had notice that the adjudications could later be used against him in criminal proceedings.

Whatever merit this theory initially appears to have is lost upon examination of Pennsylvania law. Kirby simply misstates Pennsylvania law when he asserts that juvenile records cannot be considered during later criminal proceedings.[6] Pennsylvania does treat an adjudication of juvenile delinquency differently than a criminal conviction, *see* 42 Pa.Cons.Stat.Ann. § 6354(a) (Purdon 1982), and it does provide that such adjudications cannot generally be used in later judicial proceedings. *See id.*

§ 6354(b) (Purdon 1982). However, the Pennsylvania juvenile law sets forth important exceptions to that general prohibition. In particular, § 6354(b)(1) states that a juvenile adjudication can be used "in dispositional proceedings after conviction of a felony for the purposes of a presentence investigation and report." *See Commonwealth v. Thomas,* 510 Pa. 106, 117 n. 14, 507 A.2d 57, 63 n.14 (1986) (citing § 6354(b)(1) with approval); *Commonwealth v. Krum,* 367 Pa.Super. 511, 521, 533 A.2d 134, 139 (1987) (en banc) (defendant's lengthy juvenile record, along with two other factors, constituted adequate reason for imposition of sentence greater than that normally appropriate for an initial adult offense); *Commonwealth v. Smith,* 333 Pa.Super. 179, 181–82, 481 A.2d 1365, 1366 (1984) (§ 6354(b)(1) not only allows but requires consideration of defendant's juvenile record in fashioning appropriate sentence). In addition, the sentencing guidelines currently used in Pennsylvania state courts allow sentences of increased severity to be imposed on some criminal defendants who previously have been "adjudicated delinquent." *See* 42 Pa.Cons.Stat. Ann. § 2154(a)(2) (Purdon Supp.1989); 204 Pa.Code § 303.7 (1988), *reprinted following* 42 Pa.Cons.Stat.Ann. § 9721 (Purdon Supp. 1989); *Commonwealth v. Billett,* 370 Pa. Super. 125, 535 A.2d 1182 (1988).[7]

---

**5.** Kirby has not presented any evidence of specific assurances made to him by state officials during his juvenile proceedings, nor is there any reason to think that the information and advice he was given differed in any significant way from that given to others involved in juvenile proceedings in Pennsylvania. In fact, he admits that the advice he was given during his juvenile proceedings was not a misstatement of the law. *See* Brief for Appellant at 11. Thus, we will examine how Pennsylvania generally treats adjudications of juvenile delinquency under state law.

**6.** Under Pennsylvania law, Kirby could have moved to expunge his prior adjudications of juvenile delinquency before these federal indictments were entered. *See* 18 Pa.Cons.Stat.Ann. § 9123(a) (Purdon Supp.1989). This normally would have prevented the prior adjudications from being considered during sentencing. *See* § 4A1.2(j) of the guidelines (expunged convictions generally should not be included in criminal history calculation). However, Kirby did

not move for expungement, and the juvenile adjudications remained on his record at the time of sentencing.

**7.** Under Pennsylvania's current sentencing guidelines, Kirby's juvenile record probably would not be counted in the prior record score during state sentencing proceedings because there does not appear to have been any express finding by the juvenile court that the two adjudications involved a felony or a weapons misdemeanor. *See* 204 Pa.Code § 303.7(b)(1)(ii). This does not affect Kirby's due process argument based on notice, because § 6354(b)(1) of the Juvenile Act has put juvenile delinquents on notice that their juvenile records can be used during later criminal proceedings after conviction of a felony. As we know, sentencing guidelines, federal and state, are mutable creatures. The due process notice component does not require precise information on the adverse impact that prior conduct may have on a sentence, only that it can be counted. *Accord United States v.*

■ Not only is it clear that juvenile records sometimes can be used for sentencing purposes in later criminal proceedings, but, in Kirby's case, the federal sentencing guidelines used his juvenile record in a way consistent with Pennsylvania law as set forth in § 6354(b)(1). The sentencing court's use of Kirby's juvenile record was not inconsistent with any reasonable understanding that he could have had as to how his state juvenile record could later be used during criminal sentencing. Although Kirby obviously could not have been told beforehand exactly how his juvenile record later would be factored in during sentencing, § 6354(b)(1) provided him with notice that it could be used for sentencing purposes after conviction of a felony. Hence, due process does not preclude the use of Kirby's state juvenile record in sentencing him for the three federal offenses to which he pled guilty here.[8]

## IV.

For the foregoing reasons, we will affirm the sentence of the district court.

*Fernandez,* 877 F.2d 1138, 1143 (2d Cir.1989) (due process does not require courts to advise defendants of their likely sentencing range before accepting guilty pleas).

**8.** Kirby also contends that it is a violation of due process for the sentencing guidelines to give the same criminal history point total to someone with adjudications of juvenile delinquency as would be given to someone with adult criminal convictions. We find no merit to this argument. *Cf. United States v. Hansen,* 701 F.2d 1078, 1082–83 (2d Cir.1983) ("Acts of juvenile delinquency, committed below the age at which the law permits conviction and imposition of sentence, may nonetheless enhance the sentence of an adult offender."); *United States v. Madison,* 689 F.2d 1300, 1315 (7th Cir.1982) (same), *cert. denied,* 459 U.S. 1117, 103 S.Ct. 754, 74 L.Ed.2d 971 (1983); *Schramm v. United States Parole Comm'n,* 767 F.2d 509, 511–12 (8th Cir. 1985) (no constitutional problem with Parole Commission's practice of giving equal weight to prior misdemeanor and felony convictions in evaluating prisoner). We find the reasoning in these cases to be persuasive.