916 F.2d 713
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard HOSKINS, Defendant-Appellant.
 No. 90-5397.
 United States Court of Appeals, Sixth Circuit.
 Oct. 22, 1990.
 
 Before KRUPANSKY and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant Richard Hoskins argues that the district court incorrectly applied the Federal Sentencing Guidelines when sentencing him for his cocaine-related offenses. For the following reasons, we affirm the district court's sentencing determination.
 
 I.
 
 2
 On July 27, 1988, Detective Harry Winings of the Lexington Police Department initiated an undercover narcotics investigation. A government informant telephonically introduced Winings (as a person interested in purchasing one ounce of cocaine) to James Davis at a phone number registered to Mike Blanton. After several recorded phone calls in which Winings spoke with either Davis or Blanton, a meeting was arranged to facilitate Winings' purchase of an ounce of cocaine. Winings, as instructed, drove to the Wal-Mart parking lot in London, Kentucky. When Davis and Blanton arrived, however, Winings refused to drive with them to Manchester, Kentucky, to complete the deal. Though Davis agreed to try to convince his source to allow the drugs to leave Manchester without prepayment, Davis subsequently telephoned Winings to tell him that his supplier would not allow the cocaine to be transported to London.
 
 
 3
 A subsequent series of phone calls between Winings and Davis and Blanton failed to arrange another meeting. Following Winings' return from vacation in September, telephone negotiations were resumed and a meeting was arranged at the Cracker Barrel restaurant in Corbin, Kentucky, on September 12, 1988. Blanton arrived and informed Winings that Davis would be 45 minutes late. After informing Winings that he was getting married, getting out of the drug business, and changing his phone number, Blanton left the restaurant. Davis never showed up. Two hours later Winings called Blanton and asked what had happened. Blanton informed Winings that the cocaine supplier had had to go to the hospital that day.
 
 
 4
 On September 19, 1988, Winings again called Blanton about the failed drug deal. Blanton said that he did not understand why the deal couldn't be completed. Blanton agreed to tell Davis to contact Winings. Davis did not call Winings. After Winings' calls to Blanton's answering machine remained unanswered, Winings assumed that the investigation had reached a dead end. Winings did not speak to Davis or Blanton again.
 
 
 5
 Ten days later, on September 29, 1988, Detective Winings received a telephone call from Denver Williams. Williams told Winings that he had obtained Winings' phone number from Davis and Blanton. Williams stated that it was his fault that the prior deal had fallen through because he had forgotten that his supplier had had to go to the hospital for kidney treatment that evening. After five phone calls, Winings and Williams arranged a meeting at a Union 76 truck stop in Corbin, Kentucky, on September 29, 1988. At 11:25 p.m., Winings and DEA Special Agent Jim Malone pulled into the truck stop and parked next to Williams. Williams was seated in his green pickup truck which was being driven by Richard Hoskins. Williams was arrested after he exited his pickup truck, entered Winings' pickup truck, and handed Winings a bag of cocaine. Hoskins was similarly arrested as he waited for Williams in Williams' pickup truck. Between Hoskins' feet was a loaded 9 mm. semi-automatic Uzi pistol. Testimony later revealed that Hoskins had supplied the gun and the cocaine for the transaction. Furthermore, hospital records indicated that Hoskins had been in the hospital on September 12, 1988, for a kidney-related dialysis treatment.
 
 
 6
 Davis, Blanton, Williams and Hoskins were each indicted on the first two counts of a federal indictment. The first count charged the men with conspiracy to distribute cocaine in violation of 21 U.S.C. Sec. 846; the second count charged the men with aiding and abetting the possession with intent to distribute cocaine in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2. Williams and Hoskins were also charged on a third count with using and carrying a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. Sec. 942(c)(1). Following a jury trial, Davis, Blanton and Williams were convicted on counts one and two. Williams was acquitted on count three. Because the jury was unable to reach a unanimous verdict on Hoskins, the district court declared a mistrial as to Hoskins on all three counts. The jury thereafter revealed that eleven jurors had voted Hoskins "guilty," and one juror had voted Hoskins "not guilty." David was subsequently sentenced to 41 months incarceration; Blanton to 27 months; and Williams to 30 months.[1]
 
 
 7
 On November 6, 1989, Richard Hoskins' second trial began. On November 7, Hoskins entered pleas of guilty to counts I (conspiracy to distribute 111.7 grams of cocaine) and II (aiding and abetting the possession with intent to distribute cocaine) in return for the dismissal of count III (carrying and using a firearm during, and in relation to, a drug trafficking offense).
 
 
 8
 The Probation Department's Presentence Report recommended that Hoskins' sentence be determined using an offense level of 22, criminal history category II:
 
 
 9
 Base Offense Level: According to the statutory index, the guideline corresponding to 21 U.S.C. Sec. 846 is 2D1.4. Guideline 2D1.4 requires that the base offense level be taken from the guideline for the object offense. The object offense here is 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2, aiding and abetting [the] possession and distribution of cocaine.... This section provides that offenses involving 100 to 199 grams of cocaine is [sic] to have a base level offense of 18.
 
 
 10
 Specific Offense Characteristics: Section 2D1.1(b)(1) of the Guidelines provides an upward adjustment of 2 levels if a firearm or other dangerous weapon was possessed during commission of the offense....
 
 
 11
 .............................................................
 
 
 12
 ...................
 
 
 13
 * * *
 
 
 14
 Adjustment for Role in the Offense: Section 3B1.1(c) of the Guidelines provides an increase of 2 levels if the defendant was an organizer in the offense. (See Application Note 3). Mr. Hoskins had the claimed right to a larger share of the fruits of the crime in that he was to receive the $5,400 for the sale of the cocaine. Denver Williams was to keep $600 for his part in the deal.
 
 
 15
 Adjustment for Obstruction of Justice: Mr. Hoskins is assessed 2 points under 3C1.1 (Application Note 1(c)) for obstructing justice when he gave untruthful testimony at his first trial.
 
 Adjusted Offense Level (Subtotal)--24
 
 16
 Adjustment for Acceptance of Responsibility: Based on section 3E1.1(a) the offense level is reduced by 2 levels.
 
 
 17
 .............................................................
 
 
 18
 ...................
 
 
 19
 * * *
 
 Total Offense Level--22
 
 20
 Presentence Report at 12-13.
 
 
 21
 The Probation Department's Presentence Report further found that Hoskins' criminal history included a March 2, 1986 arrest for driving under the influence of alcohol, driving without an operator's license, and possession of marijuana (3.95 grams). The appellant was again arrested on August 25, 1986 for cultivating marijuana (23 plants). Pursuant to Guidelines Sec. 4A1.1(c), Hoskins' 1986 criminal convictions resulted in a criminal history score of two which, according to the sentencing table found in Chapter 5, Part A of the Sentencing Guidelines, corresponds to a criminal history category of II.
 
 
 22
 After hearing counsels' arguments, and Hoskins' statement, the district court: adopted the base offense level of the presentence report (18); added 2 points for the presence of a firearm (pursuant to Guidelines Sec. 2D1.1(b)(1)); added 2 points for Hoskins' role in the offense (pursuant to Guidelines Sec. 3B1.1(c)); added 2 points for obstructing justice (pursuant to Guidelines Sec. 3C1.1); and deducted 2 points for Hoskins' acceptance of responsibility (pursuant to Sec. 3E1.1(a)). Accordingly, the district court determined Hoskins' adjusted offense level to be 22, criminal history category II, which directed a 46 to 57 month sentencing range. The district court therefore sentenced Hoskins to 50 months incarceration to be followed by three years supervised release.
 
 
 23
 Hoskins thereafter filed a timely notice of appeal pursuant to 18 U.S.C. Sec. 3742(a)(2).
 
 II.
 Role in the Offense
 
 24
 We must affirm the district court's sentence unless it was "imposed in violation of law or ... as a result of an incorrect application of the sentencing guidelines...." 18 U.S.C. Sec. 3742(f)(1). Furthermore, this court may not disturb the factual findings that underlie the district court's sentencing decision unless such findings are clearly erroneous. United States v. Moreno, 899 F.2d 465, 470 (6th Cir.1990) (citing United States v. Perez, 871 F.2d 45, 47-48 (6th Cir.), cert. denied, 109 S.Ct. 3227 (1989)).
 
 
 25
 Hoskins contends that the district court erred by enhancing his sentence for his role as an organizer pursuant to Sentencing Guidelines Sec. 3B1.1(c) which provides that a defendant's offense level be increased by two levels if "the defendant was an organizer, leader, manager, or supervisor in any criminal activity...." The Application Notes to Sec. 3B1.1 elucidate:
 
 
 26
 Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.
 
 
 27
 United States Sentencing Commission, Guidelines Manual, Sec. 3B1.1, comment. (n. 3) (Nov.1989). The prosecution must prove a defendant's status (as an organizer, leader, manager or supervisor) by a preponderance of the evidence. United States v. Backas, 901 F.2d 1528, 1529-30 (10th Cir.), cert. denied, --- U.S. ---- (Oct. 1, 1990).
 
 
 28
 Hoskins argues that the district court erroneously concluded that his claimed right to a larger share of the cocaine proceeds qualified him as a leader or organizer of the criminal activities. Hoskins thereby contends that his right to $5,400 (of the $6,000 cocaine sale price) fails to satisfy Sec. 3B1.1(c)'s requirements. The appellant's contention is without merit. Hoskins' culpability arises from numerous actions in addition to his right to the larger share of the cocaine sale proceeds. In fact, the Probation Office's Presentence Report specifically stated that:
 
 
 29
 Mr. Hoskins was the source of the cocaine for this conspiracy. Mr. Hoskins admitted he was to receive $5,400 for the cocaine and that he transported the cocaine to Denver Williams' residence. Mr. Hoskins drove Williams to the transaction point. He is the only person in the conspiracy to have a firearm, which he admitted was his. This firearm was a semi-automatic Uzi pistol commonly used in drug trafficking crimes. The offense could not have taken place without Mr. Hoskins because the co-conspirators previously tried to obtain cocaine from other persons and were not able to do so. Mr. Hoskins exercised control over the others in the offense as he had the cocaine, determined how much could be sold, at what price, and on what date, as evidenced by the taped conversations in the case. This case was not large enough in scope to be otherwise extensive, thus all factors in Application Note # 3 do not fit this conspiracy. It appears to the probation officer that the most compelling factor for the enhancement under 3B1.1(c) is the fact that Mr. Hoskins received $5,400, more than anyone else, and that he was the source of 87% pure cocaine.
 
 
 30
 Presentence Report at 22. Agreeing that Hoskins should be assessed a two-level sentence enhancement for his leadership role in the offense, the district court judge noted: "I think the leadership role is by the fact that he did have the firearm and he transported the cocaine to Mr. Williams' residence and he admitted that he was to receive part of the money."
 
 
 31
 Evidence introduced at Hoskins' first and second trials[2] support the conclusion that Hoskins acted as "an organizer, leader, manager, or supervisor" pursuant to Guidelines Sec. 3B1.1(c). Hoskins' assertions to the contrary are therefore without merit.[3]
 
 
 32
 Because the district court's findings regarding Hoskins' leadership role were not clearly erroneous, we uphold Hoskins' two-level sentence enhancement (pursuant to Guidelines Sec. 3B1.1(c)).
 
 Ex Post Facto
 
 33
 Hoskins claims that his sentence violates the ex post facto clause of the United States Constitution[4] because his offense level was determined, in part, by activities that were committed before November 1, 1987, the effective date of the Sentencing Guidelines. Specifically, Hoskins argues that the ex post facto clause precludes consideration of his two 1986 criminal convictions when determining his criminal history category.
 
 
 34
 Hoskins' underlying premise is flawed. "An ex post facto law is a law that punishes for conduct that was not criminal at the time it occurred, or that increases the punishment for an act after the act is done." United States v. Bucaro, 898 F.2d 368, 371 (3d Cir.1990). The Third Circuit continued:
 
 
 35
 [The defendant] is not now being punished for his juvenile conduct. The sentence he received in federal district court was for his involvement in a conspiracy to possess and distribute China white and for his role in the distribution of cocaine. These actions were criminal at the time they were committed, and the guideline that took his prior conduct into account was in effect when he committed the criminal offenses for which the district court imposed the sentence he now attacks. [The defendant] has not been given a sentence greater than that prescribed by law in effect at the time he committed these crimes. When [the defendant] committed the federal offenses for which he was sentenced, the sentencing guidelines had already clearly provided that prior adjudications ... were a relevant factor during sentencing.
 
 
 36
 Id. (footnote omitted). See McDonald v. Massachusetts, 180 U.S. 311, 312 (1901) (increasing punishment for felony when defendant had prior convictions does not violate the ex post facto clause because the punishment is solely for the new crime).
 
 
 37
 Moreover, this court previously addressed, and resolved, a comparable ex post facto argument:
 
 
 38
 Previously, courts have held that an increase in sentence for a repeat offense does not violate the ex post facto clause simply because the first offense was committed before the passage of the repeat offender law. This supports the proposition that augmenting punishment for a later offense, based on acts committed before a law is passed, does not violate the ex post facto clause.
 
 
 39
 Such a rule is justified, as are repeat offender laws, because the heavier penalty for the offense is not an additional punishment for the earlier behavior but is a statutorily authorized punishment for criminal conduct that has occurred after the passage of the law. Furthermore, policy dictates allowing the use of all relevant information for sentencing under the new guidelines. Omitting all reference in sentencing to information that occurred before the effective date of the guidelines would cripple the use of the guidelines to bring conformity to punishment for like criminal conduct.
 
 
 40
 United States v. Ykema, 887 F.2d 697, 700 (6th Cir.1989) (citations omitted), cert. denied, 110 S.Ct. 878 (1990). Accordingly, Hoskins' ex post facto argument is without merit.[5]
 
 
 41
 For the aforementioned reasons, we AFFIRM the district court's sentencing determination.
 
 
 
 [1]
 Williams, Davis and Blanton thereafter challenged their sentences pursuant to 18 U.S.C. Sec. 3742(a)(2). The three men argued that the district court incorrectly applied the Federal Sentencing Guidelines when sentencing them for their drug-related offenses. Earlier this year, this court affirmed Williams' sentence but reversed Blanton's and Davis' sentences, remanding their sentences to the district court for redetermination. United States v. Williams, 894 F.2d 208 (6th Cir.1990)
 
 
 [2]
 There is "no constitutional, statutory, or procedural rule" that bars the sentencing judge from considering "relevant and reliable information" introduced at "separate trial[s]." United States v. Beaulieu, 893 F.2d 1177, 1179 (10th Cir.), cert. denied, 110 S.Ct. 3302 (1990). Moreover, the Federal Rules of Evidence do not apply at sentencing, Fed.R.Evid. 1101(d)(3), and "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. Sec. 3661
 
 
 [3]
 Hoskins not only argues that it was inappropriate to increase his offense level for being an "organizer, leader, manager, or supervisor" pursuant to Guidelines Sec. 3B1.1(c), he further contends that his offense level should have been decreased by two levels pursuant to Guidelines Sec. 3B1.2(b) ("minor participant" status). The evidence presented to the district court regarding Hoskins' conduct clearly belies Hoskins' contention that he was a minor participant in the offense and "less culpable than most other participants...." United States Sentencing Commission, Guidelines Manual, Sec. 3B1.2, comment. (n. 3) (Nov.1989); see also United States v. Perry, 908 F.2d 56 (6th Cir.1990) ("The culpability determination is 'heavily dependent upon the facts,' and the defendant has the burden of proving mitigating factors by a preponderance of the evidence." Id. at 58 (citations omitted))
 
 
 [4]
 "No Bill of Attainder or ex post facto Law shall be passed." United States Constitution, article I, section 9, clause 3
 
 
 [5]
 The appellee alternatively argues that we need not resolve the appellant's ex post facto contention because overlapping guideline ranges at offense level 22 (offense level 22, criminal history category I provides for a 41-51 month range; offense level 22, criminal history category II provides for a 46-57 month range) render the ex post facto determination moot in light of Hoskins' 50 month sentence. Though this argument is superficially appealing, it fails to recognize that the district court judge in the instant action failed to specify that he "would have pronounced the same sentence whether [the] dispute as to the appropriate guideline range was resolved in favor of the defendant or the government." United States v. Turner, 881 F.2d 684, 688 (9th Cir.), cert. denied, 110 S.Ct. 199 (1989). See also United States v. Bermingham, 855 F.2d 925 (2d Cir.1988) ("As long as the sentencing judge is satisfied that the same sentence would have been imposed no matter which of the two guideline ranges applies, the sentence should stand. And a reviewing court similarly need not select between the two arguably applicable guideline ranges if it is satisfied that the same sentence would have been imposed under either guideline range." Id. at 934-35.)