(898 P.2d 1182)

No. 71,985

STATE OF KANSAS, *Appellee*, v. STEVEN W. LAMUNYON, *Appellant*.

Opinion filed June 30, 1995.

*Rick Kittel*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Timothy J. Chambers*, county attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before GERNON, P.J., PIERRON, J., and MICHAEL J. MALONE, District Judge, assigned.

MALONE, J.: Steven W. LaMunyon, Jr., appeals the district court's determination of his criminal history category for purposes of retroactive sentence conversion under the sentencing guidelines.

On April 9, 1993, LaMunyon pled no contest to possession of marijuana with intent to sell. The district court sentenced La-

Munyon to 3 to 10 years' imprisonment and denied his motion for sentence modification.

On November 30, 1993, the Department of Corrections (DOC) issued a sentencing guidelines report which stated that LaMunyon was eligible for retroactive conversion of his sentence. The report showed that LaMunyon had a criminal history which included three juvenile adjudications for nonperson misdemeanors. The State filed a motion challenging the DOC report. The presentence investigation report prepared after LaMunyon's conviction for possession of marijuana with intent to sell noted an additional juvenile adjudication for burglary which was not included in the DOC report.

The district court held a hearing and found that LaMunyon's criminal history included a juvenile adjudication for burglary, a person felony; thus, LaMunyon's criminal history category was "D," which made him ineligible for retroactive sentence conversion. LaMunyon appeals the district court's determination of his criminal history category.

The Kansas Sentencing Guidelines Act (KSGA) provides that juvenile adjudications should be considered in determining a defendant's criminal history category. See K.S.A. 1994 Supp. 21-4710 *et seq.* However, LaMunyon makes three arguments as to why juvenile adjudications should not be considered.

First, LaMunyon argues that the KSGA is in direct conflict with the Kansas Juvenile Offenders Code. K.S.A. 38-1601, the preamble to the code, provides:

"In no case shall any order, judgment or decree of the district court, in any proceedings under the provisions of this code, be deemed or held to import a criminal act on the part of any juvenile; but all proceedings, orders, judgments and decrees shall be deemed to have been taken and done in the exercise of the parental power of the state."

LaMunyon argues that because the code prohibits a juvenile adjudication from being construed as a criminal act, a juvenile adjudication cannot give rise to any criminal implication and cannot be used to calculate criminal history.

LaMunyon cites the rule that where a general statute and a specific statute are in conflict, the specific statute should control unless

the legislature intended otherwise. See *Carmichael v. State*, 255 Kan. 10, 15, 872 P.2d 240 (1994). He argues that the juvenile code is the more specific statute and should control over the provisions of the KSGA. The State argues that even if the juvenile code is the more specific statute, the legislature intended the KSGA to control over the juvenile code in this instance.

This court recently commented on the legislature's intent regarding the use of juvenile adjudications in determining criminal history.

"[T]he legislature is clearly aware that juvenile adjudications do not count as criminal convictions. In writing the KSGA, the legislature made special provisions in K.S.A. 1993 Supp. 21-4710 to include juvenile adjudications, in some instances, as part of an offender's criminal history, showing its awareness that without the special provisions juvenile adjudications could not be counted as prior convictions." *State v. Ward*, 20 Kan. App. 2d 238, 244, 886 P.2d 890 (1994).

The juvenile code was adopted in 1982. Since the legislature specifically provided that juvenile adjudications were to be considered in determining criminal history under the KSGA, it logically follows that the legislature intended the KSGA to be the controlling statute.

LaMunyon's second argument is that because a juvenile does not have the right to a jury trial, a juvenile adjudication should not be used to enhance punishment in a later adult criminal proceeding. He argues this is analogous to the rule that a prior, uncounseled conviction cannot be used to enhance the sentence imposed for a subsequent crime. See *State v. Priest*, 239 Kan. 681, 685, 722 P.2d 576 (1986). Furthermore, allowing a juvenile adjudication to have a criminal implication runs contrary to long-standing Kansas case law, particularly *State, ex rel., v. Owens*, 197 Kan. 212, 416 P.2d 259 (1966).

This issue is a matter of first impression in this state. The Oregon Court of Appeals considered a similar argument in *State v. Stewart*, 123 Or. App. 147, 859 P.2d 545 (1993). The *Stewart* court explained that even though a juvenile adjudication does not include the right to a jury trial, due process does require other protections such as the right to counsel, confrontation, and cross-examination. The court found that these due process protections were sufficient

to allow a juvenile adjudication to be used later in enhancing an adult sentence. *Stewart*, 123 Or. App. at 150-51.

The State argues that this court should follow *Stewart*, while LaMunyon urges this court to adopt the reasoning of the dissent. The dissent relied on *Baldasar v. Illinois*, 446 U.S. 222, 64 L. Ed. 2d 169, 100 S. Ct. 1585 (1980), a Supreme Court case holding that a prior uncounseled conviction which was valid for imposing a non-prison sentence could not be used to enhance a defendant's prison sentence in a later proceeding.

The Supreme Court overruled *Baldasar* in *Nichols v. United States*, 511 U.S. ___, 128 L. Ed. 2d 745, 114 S. Ct. 1921 (1994). In *Nichols*, the Court held that an uncounseled misdemeanor conviction, valid under *Scott v. Illinois*, 440 U.S. 367, 59 L. Ed. 2d 383, 99 S. Ct. 1158 (1979), because no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction. 128 L. Ed. 2d at 755. Even if the Kansas Supreme Court continues to hold that uncounseled convictions may not be used to enhance later sentences, the analogy to juvenile adjudications with no right to a jury trial is not persuasive.

Even before the *Nichols* Court overruled *Baldasar*, those federal circuit courts which considered the issue refused to extend the *Baldasar* holding to cases involving juvenile adjudications and the federal sentencing guidelines. See *McCullough v. Singletary*, 967 F.2d 530, 533 (11th Cir. 1992); *U.S. v. Williams*, 891 F.2d 212, 215 (9th Cir. 1989).

The *Williams* court explained the distinction between the uncounseled conviction at issue in *Baldasar* and a juvenile adjudication. In *Baldasar*, the uncounseled conviction was valid for purposes of imposing a nonprison sentence but would have been invalid for purposes of imposing a prison sentence. The *Baldasar* Court held that the conviction was, therefore, also invalid for purposes of enhancing a prison sentence. By contrast, a juvenile may be deprived of liberty without a jury trial. In other words, the adjudication is valid for purposes of depriving the juvenile of his or her liberty. The *Williams* court stated: "If it does not violate due process for a juvenile to be deprived of his or her liberty without a jury trial, we fail to find a violation of due process when a later

deprivation of liberty is enhanced due to this juvenile adjudication." *Williams*, 891 F.2d at 215. The court further distinguished *Baldasar* as a case involving the right to counsel, a more fundamental right than the right to a jury trial. See *Argersinger v. Hamlin*, 407 U.S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006 (1972).

Because *Nichols* overruled *Baldasar*, and because the reasoning of the *Williams* and *Stewart* courts is persuasive, LaMunyon's second argument regarding the use of juvenile adjudications in determining criminal history under the KSGA fails.

LaMunyon's third and final argument that juvenile adjudications should not be considered in determining a defendant's criminal history category is that by giving criminal effect to a juvenile adjudication, the KSGA violates the constitutional prohibition against ex post facto laws.

"The United States Constitution prohibits the legislative enactment of any ex post facto law. U.S. Const., art. I, § 10. Two critical elements must be present for a criminal or penal law to be ex post facto: It must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it. A criminal law disadvantages the offender if it punishes an act not punishable when committed, imposes additional punishment to that then prescribed, aggravates the crime, or alters the legal rules of evidence." *Lamb v. Kansas Parole Board*, 15 Kan. App. 2d 606, Syl. ¶ 8, 812 P.2d 761 (1991).

LaMunyon argues that the KSGA operates retrospectively because it gives a criminal effect to his juvenile adjudications so that they are included in his criminal history. Because his criminal history is comprised of only juvenile adjudications, were it not for their inclusion under the KSGA, LaMunyon would be eligible for retroactive sentence conversion.

The State argues that using LaMunyon's juvenile adjudications in determining criminal history does not violate the constitutional prohibition against ex post facto laws because the punishment for the juvenile adjudication is not being increased. The State cites *U.S. v. Bucaro*, 898 F.2d 368 (3d Cir. 1990). In *Bucaro*, the defendant argued that the federal sentencing guidelines violated the constitutional prohibition against ex post facto laws because the guidelines require consideration of juvenile adjudications in calculating criminal history. The *Bucaro* court rejected the defen-

dant's argument because the defendant was not being punished for his juvenile conduct and the guidelines were in effect when the defendant committed the crimes for which the court imposed the sentence he now attacked. 898 F.2d at 371.

The reasoning of *Bucaro* is similar to that used by Kansas appellate courts in holding that habitual criminal statutes are not ex post facto laws. In *State v. Campbell*, 9 Kan. App. 2d 474, 477, 681 P.2d 679 (1984), this court rejected an argument that a habitual criminal statute was an ex post facto law because at the time of the prior convictions, the law did not impose penalties on repeat offenders. The court explained that a repeat offender is not punished for the prior offense but is given an enhanced penalty on the current offense because of his status as a repeat offender.

The same analysis applies to LaMunyon's argument. He is not being punished for his juvenile adjudications. Furthermore, LaMunyon is really complaining that he is not receiving the benefit of retroactive sentence conversion because of his juvenile adjudications. The failure to convert LaMunyon's sentence only results in his serving the same sentence and not a longer one than was originally imposed. LaMunyon has not been disadvantaged by the KSGA; therefore, the KSGA is not an ex post facto law.

Next, LaMunyon argues that the district court incorrectly determined that his criminal history included a person felony which placed him in category "D." As discussed above, LaMunyon's criminal history consists entirely of juvenile adjudications, only one of which would be a felony if committed as an adult. LaMunyon argues that felony, a burglary, should have been classified as a nonperson felony instead of a person felony because the building involved was a business not used as a dwelling. See K.S.A. 1994 Supp. 21-3715. Even if LaMunyon is correct, he would fall in box 3-G on the drug grid; therefore, he would still be ineligible for conversion. K.S.A. 1994 Supp. 21-4724(b)(1). However, his appeal of the issue is not moot because of the danger that if he is convicted of another crime, the sentencing court might take judicial notice of the journal entry in this case, which states that his criminal history category is "D."

Apparently, no record was made of the hearing at which the district court determined LaMunyon's criminal history, and this court cannot discern whether LaMunyon raised this argument with the district court. The journal entry does not indicate whether the district court considered that a burglary may be a person or nonperson felony depending upon the facts of the crime.

The complaint which charged LaMunyon with burglary alleged he entered Burt's Bar BQ & Bar with the intent to steal 18 sausages, several cases of beer, 10 lighters, and 26 packs of cigarettes. The district court ordered LaMunyon to pay restitution for damage to the door of Burt's Bar BQ & Bar to a man whose address was not the same as the bar's. From these facts, it appears that La-Munyon burglarized a building not used as a dwelling; therefore, the burglary adjudication should be classified as a nonperson felony for purposes of criminal history under K.S.A. 1994 Supp. 21-3715. Accordingly, this case is remanded with instructions to consider on the record the issue of whether the burglary adjudication is a person or nonperson felony.

Affirmed in part and remanded.

GERNON, J., concurring: I am required to agree with the majority here based upon precedent before us by courts of last resort and several United States circuit court decisions. The facts and the issues before us require that result which, in my view, runs counter to traditional notions of fair play and substantial justice.

To accept this sentencing philosophy, in my view, is a contradiction in legislative philosophy and the collective wisdom of those of us who have worked in the trial courts.

The juvenile justice system is based upon the concept of *parens patriae*. From its inception, a juvenile proceeding is not a question of guilt, but, rather, one of determining what is in the best interest of a child. While certain constitutional safeguards are observed in juvenile offender proceedings, no one would seriously argue that those safeguards can be equated with or compared to the due process protections in an adult criminal proceeding. The very nature of juvenile offender cases renders them different from adult trials where guilt or innocence is determined.

The legislative philosophy has been that a label affixed to a juvenile's conduct does not necessarily serve the same kind of interest as does a label of guilt affixed to an adult criminal proceeding. Society says that in a juvenile proceeding "the best interest of the child" is paramount. In an adult criminal proceeding, there are other competing interests, most weighty among them the interests of society, which are to be considered. This is a fundamental and vital distinction between these two proceedings.

In the real world, what we have traditionally told juveniles in this state is that their adjudication of guilt will not follow them and can be expunged and will, in effect, not be a "record" they will be required to answer for. What the sentencing guidelines in cases such as LaMunyon's tell the children of this state is that this is not so. Traditionally, attorneys appointed to represent juveniles in juvenile offender cases have been able to advise their clients that a stipulation to the evidence and an adjudication as a juvenile offender would not have permanent and lasting repercussions. That is no longer the case. In my view, attorneys now have the important obligation of advising every juvenile of the ramifications of the Kansas Sentencing Guidelines Act and weighing those ramifications carefully before stipulating in any juvenile offender case.

In addition, our standard of review in sentencing cases is usually to determine whether there is an abuse of discretion. This standard will place an increasingly heavy burden on the trial judges to decide when and if to depart downward or upward from the guidelines based upon the juvenile record. Such factors as the age of the juvenile offense, the seriousness of the juvenile offense, the emotional and mental age of the juvenile at the time of the offense, and other extenuating circumstances, including the entire juvenile and social history of a now-adult offender, will, of necessity, be required to be examined by the trial court.

While I concur with the result under the facts and the issues raised in this case, these facts also raise, in my view, serious due process considerations which we are not required to consider here.

PIERRON, J., concurring: I concur with the majority opinion and with Judge Gernon's concurring opinion.