(916 P.2d 712)
Nos. 73,014
73,015

STATE OF KANSAS, *Appellee*, v. DARRELL L. MURRAY, *Appellant*.

—

Opinion filed May 17, 1996.

*Benjamin C. Wood*, special appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Joe E. Lee*, assistant county attorney, *Rodney H. Symmonds*, county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before GERNON, P.J., GREEN, J., and PHILIP L. SIEVE, District Judge, assigned.

SIEVE, J.: Darrell L. Murray appeals the district court's inclusion of three expunged nonperson felony juvenile adjudications in his criminal history to compute his sentence under the Kansas Sen-

tencing Guidelines Act (KSGA). He also appeals the district court's refusal to allow him to withdraw his guilty plea.

On August 24, 1994, Murray pled guilty to sale of cocaine within 1,000 feet of a school and possession of marijuana with intent to sell. Before entering this plea, Murray read a statement to the court explaining that his lawyer had informed him that the guilty plea could subject him to 83 months' imprisonment if his criminal history included three or more person felonies or 51 months' imprisonment if he had one misdemeanor or no criminal record.

At the same hearing but in a separate case with separate counsel, Murray also pled guilty to possession of cocaine with intent to sell. Murray read another statement to the court explaining that his lawyer had informed him that this guilty plea could subject him to 51 months' imprisonment if his criminal history included three or more person felonies or 16 months' imprisonment if he had one misdemeanor or no criminal record. The district court informed Murray that because he committed the latter offense while he was on an appearance bond for the former offenses, the sentences for the two cases would run consecutively. At sentencing, the State contended that Murray's criminal history was "E" because of three nonperson felony juvenile adjudications. Murray objected to such a computation because those juvenile adjudications had been expunged. The State conceded that the adjudications had been expunged but argued that the adjudications nonetheless counted as prior felony convictions under the sentencing guidelines.

Murray informed the district court that he had not expected the expunged adjudications to be included in his criminal history and, if the district court were to include those adjudications in this criminal history, he wanted to withdraw his guilty plea. Murray's attorney explained that when he advised Murray to plead guilty, he relied, in part, on statements by Murray's other attorney that Murray had no criminal record. Additionally, the bond investigation had not revealed the expunged juvenile adjudications, and Murray's attorney lacked access to the KBI file that would have revealed such records. The district court refused to allow Murray to withdraw his plea, overruled Murray's objection to the State's criminal

history computation, and included the three expunged nonperson felony juvenile adjudications in Murray's criminal history.

The district court sentenced Murray to 59 months' imprisonment for selling cocaine within 1,000 feet of a school, to be served concurrent with 30 months' imprisonment for possession of marijuana with intent to sell. The district court sentenced Murray to 30 months' imprisonment for possession of cocaine with the intent to sell, to be served consecutive to the other two sentences, for a controlling term of 89 months. Murray appeals.

Murray argues that the district court erred in considering the three nonperson felony juvenile adjudications in computing his criminal history because adjudications under the juvenile code do not import criminal actions. Specifically, Murray argues that the juvenile code and the KSGA conflict on this issue and, because statutes must be construed in favor of a criminal defendant, this court should hold that the juvenile code prohibits the use of juvenile adjudications in computing a criminal history under the KSGA. This is an issue of statutory interpretation, which is a question of law. An appellate court's review of a question of law is unlimited. *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, 283, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995).

In *State v. LaMunyon*, 21 Kan. App. 2d 281, 898 P.2d 1182 (1995), *aff'd* 259 Kan. 54, 911 P.2d 151 (1996), the court addressed this issue and held that because the legislature specifically provided that juvenile adjudications were to be considered in determining criminal history under the KSGA, it logically follows that the legislature intended the KSGA to be the controlling statute. 21 Kan. App. 2d at 283. Based on *LaMunyon*, we find that juvenile adjudications can be included in one's criminal history under the KSGA.

Murray argues that the district court's use of juvenile adjudications in his criminal history computation violated due process. The *LaMunyon* court also rejected this argument, reasoning that because depriving a juvenile of liberty under the juvenile code does not violate due process, the use of juvenile adjudications to enhance one's criminal history under the KSGA does not violate due process. *LaMunyon*, 21 Kan. App. 2d at 284-85.

Murray argues that the district court's use of juvenile adjudications in his criminal history violated the constitutional prohibition against ex post facto laws. *LaMunyon* was a retroactive conversion case, and the court reasoned, in part, that the refusal to convert the defendant's sentence merely resulted in the defendant serving his original sentence; because the KSGA did not disadvantage the defendant but only denied him the benefit of conversion, the KSGA did not operate ex post facto. 21 Kan. App. 2d at 286. The *LaMunyon* court also relied on *U.S. v. Bucaro*, 898 F.2d 368, 371 (3d Cir. 1990), where the court held that the federal sentencing guidelines did not operate ex post facto by including juvenile adjudications in the defendant's criminal history because the defendant was not being punished for his juvenile conduct and the guidelines were in effect when he committed the crimes for which the sentence was imposed. Here, as in *Bucaro*, the KSGA did not operate ex post facto regarding Murray's crimes.

At trial, the issue was not whether juvenile adjudications generally could be included in one's criminal history but, more specifically, whether expunged juvenile adjudications could be included. On appeal, Murray curiously elected to brief the former more general issue, using the same arguments that the *LaMunyon* court rejected. Because the trial court addressed the latter more specific issue concerning expunged juvenile adjudications, this court can address this issue on appeal. See *R. D. Andersen Constr. Co. v. Kansas Dept. of Human Resources*, 7 Kan. App. 2d 453, 456, 643 P.2d 1142, *rev. denied* 231 Kan. 801 (1982).

Under the KSGA, criminal history is based on several types of prior convictions, including nonperson felony juvenile adjudications. K.S.A. 21-4710(a). K.S.A. 21-4710(d)(2) states that "[a]ll prior adult felony convictions, including expungements, will be considered and scored." A common rule of statutory construction is that the mention or inclusion of one thing implies the exclusion of another. This rule should be applied to discern legislative intent and should not be employed if it would override or defeat a contrary legislative intention. *State v. Luginbill*, 223 Kan. 15, 20, 574 P.2d 140 (1977). Under this rule, the inclusion of expunged adult convictions in criminal history computations in K.S.A. 21-

4710(d)(2) implies the exclusion of expunged juvenile adjudications unless the other provisions of the KSGA show a contrary legislative intent.

K.S.A. 21-4710(d)(4) provides that nonperson misdemeanor juvenile adjudications and some nonperson felony juvenile adjudications will decay and will not be included in the criminal history computation if the crime of conviction was committed after the offender reached the age of 25. Juvenile adjudications which would constitute more severe nonperson felonies and person felonies will not decay. K.S.A. 21-4710(d)(5), (6). The KSGA is silent as to whether expunged juvenile adjudications are included in one's criminal history. K.S.A. 21-4710(d)(11) provides: "Except as otherwise provided, all other prior convictions will be considered and scored."

In *State v. Flummerfelt*, 235 Kan. 609, 612, 684 P.2d 363 (1984), the court provided instruction for construing criminal statutes:

"In construing statutes . . . [e]ffect must be given, if possible, to the entire act and every part thereof. To this end it is the duty of the court, so far as practicable, to reconcile the different provisions so as to make them consistent, harmonious and sensible. [Citations omitted.] In addition, penal statutes must be strictly construed in favor of persons subjected to their operations, which simply means that ordinary words are to be given their ordinary meaning. Such a statute should not be read to add that which is not readily found therein or to read out what as a matter of ordinary English language is in it. [Citations omitted.]"

At first blush, the exclusion of expunged juvenile adjudications from the provisions of K.S.A. 21-4710(d)(2) expressly stating that expunged adult felony convictions are included in criminal history suggests that expunged juvenile adjudications are excluded from one's criminal history. The ordinary meaning of the language in K.S.A. 21-4710(d)(11), however, is all inclusive; unless the KSGA expressly provides otherwise, prior convictions, which include nonperson felony juvenile adjudications under K.S.A. 21-4710(a), are included in criminal history. This catchall provision indicates the legislature's intent to include expunged juvenile adjudications in one's criminal history unless the limited decay provisions for juvenile adjudications in K.S.A. 21-4710(d)(4)-(6) require otherwise.

Juvenile adjudications can be subject to decay only after an offender reaches the age of 25. K.S.A. 21-4710(d)(4). Murray was only 23 at the time of sentencing, so his juvenile adjudications had not decayed. Because nonperson felony juvenile adjudications are included in one's criminal history unless such adjudications have decayed, the district court did not err by including the three expunged juvenile adjudications in Murray's criminal history.

Murray argues that the district court erred in not allowing him to withdraw his plea because the district court did not inform him of his privilege against self-incrimination and his right to confront his accusers before accepting his plea. His motion to withdraw his plea, however, was based on his claim that he had pled pursuant to false assumptions and mistaken advice from counsel concerning his criminal history. He never raised in district court the issues of the district court's failure to inform him at the plea hearing of his privilege against self-incrimination and his right to confront his accusers. These issues and these arguments are, therefore, not properly before this court. See *State v. Solomon*, 257 Kan. 212, 221, 891 P.2d 407 (1995).

Murray argues that the trial court erred in not allowing him to withdraw his guilty plea because his attorney advised him to plead guilty under the false assumption that Murray's sentence would be computed with no criminal history so that he did not knowingly and voluntarily enter his plea. K.S.A. 22-3210(a) provides that a plea of guilty or nolo contendere may be accepted when:

"(2) in felony cases the court has informed the defendant of the consequences of the plea, including the specific sentencing guidelines level of any crime committed on or after July 1, 1993, and of the maximum penalty provided by law which may be imposed upon acceptance of such plea; and

"(3) in felony cases the court has addressed the defendant personally and determined that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea."

Compliance with these provisions is essential to protect a defendant's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. See *State v. Anziana*, 17 Kan. App. 2d 570, 571, 840 P.2d 550 (1992).

K.S.A. 22-3210(d) provides:

"A plea of guilty or *nolo contendere*, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged. To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea."

Because Murray moved to withdraw his guilty plea before his sentence was adjudged, the statute instructs us to review this issue under an abuse of discretion standard. Judicial discretion is abused if judicial action is arbitrary, fanciful, or unreasonable so that no reasonable person would take the view adopted by the court. *State v. Warden*, 257 Kan. 94, 116, 891 P.2d 1074 (1995).

Murray relies on *Morrow v. State*, 219 Kan. 442, 447, 548 P.2d 727 (1976), where the court reversed a summary dismissal of a K.S.A. 60-1507 petition that alleged the prosecution coerced the defendant to plead guilty to one count by threatening to seek maximum consecutive sentences on four counts where three of the counts would have been lesser offenses. 219 Kan. at 444-45. Not only did the law prohibit the State from bringing more than one of those charges against the defendant, the petition also alleged that defense counsel advised the defendant to enter the plea to avoid the possibility of consecutive sentences. 219 Kan. at 445. In reversing dismissal of the petition, the court explained:

"Both the prosecutor and defense counsel have certain obligations in plea bargaining. It is improper for the prosecutor to induce a guilty plea by misrepresentations of the law or by unfulfillable promises. [Citation omitted.] Likewise, the defense counsel is obligated to fully and frankly advise his client as to the range of permissible penalties and the possible choices open to him. [Citation omitted.] Failure to fulfill these obligations can have a significant effect on the voluntariness of an accused's guilty plea." 219 Kan. at 445-46.

This rule's admonition of a prosecutor's misrepresentation of the law to induce a plea would apply with equal force to a prosecutor's concealing from defense counsel otherwise unavailable factual information that would significantly affect the defendant's sentence. See *State v. Jackson*, 255 Kan. 455, 461, 874 P.2d 1138 (1994) (explaining that facts can sufficiently demonstrate that the denial of a motion to withdraw a guilty plea infringes upon a defendant's substantial rights). Such concealment could prevent defense counsel from fulfilling his or her obligation to advise the defendant of

the penalties the defendant would face by pleading guilty. Under *Morrow*, even without concealment or misrepresentation by the prosecution, defense counsel's advice would be insufficient to render a plea knowing and voluntary due to defense counsel's lack of information relative to the sentence that would result from a guilty plea.

Here, the district court explained what Murray's sentence could be if he had either the highest or the lowest criminal history provided on the drug offense grid. Neither the State nor the district court, however, made any reference to the expunged juvenile adjudications or any other indication as to what his criminal history might be. If the expunged nonperson felony juvenile adjudications had not been counted in Murray's criminal history, he would have one prior conviction for an adult nonperson misdemeanor, giving him the lowest criminal history score on the grid. See K.S.A. 21-4709. As indicated at the plea hearing, Murray's maximum controlling sentence under such circumstances would have been 67 months—22 months less than the sentence he received.

Relying on *Solomon*, 257 Kan. at 225, the State argues that the district court sufficiently apprised Murray of the range of consequences for his guilty pleas so that Murray pled knowingly and voluntarily. The problem with the State's position is that the district court's allocution was completely in the abstract. The district court at no point inquired into, and the State made no indication as to, Murray's actual criminal history. Although in some circumstances, issues of criminal history computation might be proper issues for determination at sentencing after a plea agreement, the omission of any discussion of the expunged juvenile adjudications at the plea hearing is particularly relevant here because Murray's attorney lacked knowledge and access to knowledge of the expunged adjudications. In *Solomon*, the district court informed the defendant at the plea hearing of its awareness of two prior convictions against the defendant. Additionally, the defendant's attorney denied the defendant's allegation that he had led the defendant to believe that the sentence would be in a range lower than the sentence imposed. Here, by contrast, Murray's lawyer stated that he was, in fact, un-

aware of the expunged juvenile adjudications when he counseled Murray regarding the plea.

Although the most prudent attorney might have thought to ask Murray about any expunged juvenile adjudications in his past, we know of no other appellate cases dealing with the State using such adjudications in a criminal history. The State's use of such adjudications in this case appears to be an atypical test of the subtleties of the KSGA.

As previously stated in this opinion, the catchall provision in K.S.A. 21-4710(d)(11) appears to provide for such a criminal history computation. This subtlety of the KSGA, nonetheless, must be reconciled with the constitutional provisions requiring knowing and voluntary plea agreements. This reconciliation is difficult because expunged juvenile adjudications are not public records and, as here, defense counsel might not be aware of their existence.

Where a court has wide discretion in sentencing, both the prosecution and defendant submit to that discretion when entering a plea agreement. In such circumstances, a guilty plea is not involuntary if the defendant is told of the range of the court's discretion before entering the plea. See, *e.g., Solomon*, 257 Kan. at 217. Where the law and the facts specifically dictate or allow a sentencing enhancement, however, the prosecution and the court must share knowledge of such a situation with the defendant in order for the guilty plea to be voluntary. See, *e.g, State v. Mackey*, 553 S.W.2d 337, 341-42 (Tenn. 1977) (reversing a conviction based on a guilty plea where the defendant entered the plea without being informed that prior convictions evidence inadmissible to prove guilt was admissible to enhance the sentence); *White v. Gaffney*, 435 F.2d 1241, 1244-45 (10th Cir. 1970) (reversing a Kansas state conviction based on a guilty plea because the prosecution induced the plea through misrepresentation). In order to allow a criminal defense attorney to fulfill his or her obligations to a defendant concerning the consequences of pleading guilty, the defense attorney must have, and thus the prosecutor must share with the defense attorney, knowledge of any expunged juvenile adjudications that will be used in the defendant's criminal history.

Here, the prosecution either knew about Murray's expunged juvenile adjudications and concealed such information from Murray's attorney until after Murray entered his plea, or discovered such information after the plea hearing. In either case, Murray's plea agreement failed to meet the knowing and voluntary constitutional standard because he entered it without sufficient knowledge of the actual consequences. The trial court abused its discretion by refusing to allow Murray to withdraw his plea and either proceed to trial or reenter the plea with knowledge that the expunged juvenile adjudications would affect his sentence.

Reversed and remanded.