**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jermal DANIELS, a/k/a Tony,
Defendant–Appellant.**

**No. 90–5324.**

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 7, 1990.

Decided April 1, 1991.

R. Lee Booten, II, Huntington, W.Va., for defendant-appellant.

John Kirk Brandfass, Asst. U.S. Atty., argued (Michael W. Carey, U.S. Atty., Charleston, W.Va., on brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, NIEMEYER, Circuit Judge, and MERHIGE, Senior District Judge for the Eastern District of Virginia, sitting by designation.

NIEMEYER, Circuit Judge:

Jermal Daniels, who was charged with four counts of possession and conspiracy to distribute substantial amounts of crack cocaine in Charleston, West Virginia, pleaded guilty to count four which charged him with possession of crack cocaine with the intent to distribute. He was sentenced under the United States Sentencing Guidelines to 188 months, the minimum in the guideline range found applicable by the district court. On appeal of his sentence, Daniels charges that the district court, in determining the applicable guideline range, improperly considered juvenile adjudications and improperly refused to order specific performance of an alleged informal plea agreement. Finding no merit in either argument, we affirm the sentence.

## I

In computing Daniels' criminal history category, the district court used two juvenile adjudications from the state of New York to reach a criminal history category of III. *See* U.S.S.G. § 4A1.2(d). Daniels argues that under New York law these adjudications should not have been used because they were confidential and subject to expungement. He also argues that their use violates due process because he was not aware that confidential juvenile proceedings could be used to enhance future sentences.

The New York law governing use of juvenile adjudications, on which Daniels relies, states that:

Another court, in imposing sentence upon an adult after conviction, may receive and consider the records and information on file with the Family Court,

unless said records and information have been sealed pursuant to Section 375.1. N.Y.Fam.Ct. Act § 381.2(2) (McKinney 1983). Because the statute expressly permits use of juvenile records by a later sentencing court, Daniels bears the burden of showing that he falls within the exception provided by the statute. *Cf. United States v. Sammons*, 918 F.2d 592, 604 (6th Cir.1990) (when challenging use of prior convictions in sentencing, defendant bears the burden of showing that those convictions were unconstitutional); *United States v. Davenport*, 884 F.2d 121, 124 (4th Cir.1989) (same). Daniels failed to carry his burden because, as he admits, he was not able to determine whether or not his records were sealed pursuant to Section 375.1. Brief of Appellant at 9. His inquiry, however, should have taken him no further than the statute. Section 375.1 provides that juvenile records are sealed "upon termination of a delinquency proceeding against a respondent in favor of such respondent." Because Daniels was convicted on both occasions in question here, his state records would not be sealed.

■ Even if the juvenile proceedings had been sealed pursuant to state law, that law could not bar consideration of them by a federal court in determining a sentence, when federal law provides otherwise. U.S. Const. Art. VI, cl. 2 (supremacy clause). Section 4A1.2(d) of the Sentencing Guidelines expressly permits sentencing courts to consider juvenile adjudications, with some restrictions not applicable here, and thus the Sentencing Guidelines must be given force over any conflicting state law.

■ Daniels argues alternatively that the Sentencing Guidelines, in providing for use of prior confidential juvenile adjudications, are unconstitutional on due process grounds. Because the adoption of the Sentencing Guidelines preceded the commission of his federal offenses, Daniels cannot argue that he did not have notice at the time he committed them that prior juvenile adjudications could be used at his sentencing. Instead he relies on *United States v. Bucaro*, 898 F.2d 368 (3d Cir.1990), to argue that if a state's juvenile laws prohibit the use of juvenile records in later court proceedings, a defendant would not have notice at the time of the juvenile offenses that the juvenile records could be used against him in a later federal court proceeding. Under this theory, the subsequent enactment of the Sentencing Guidelines deprived the defendant of a liberty interest without due process. In *Bucaro*, however, the court determined that the defendant had misinterpreted Pennsylvania state law regarding the use of juvenile proceedings and therefore did not address the merits of this due process theory.

Similarly, Daniels misinterpreted New York state law governing his juvenile adjudications, as we have already noted. Moreover, his due process theory is not supported by the facts. The Sentencing Guidelines became effective on November 1, 1987. The offenses for which Daniels was adjudicated a juvenile delinquent occurred on February 8, 1988, and July 6, 1988. Because both occurred after the effective date of the Sentencing Guidelines, Daniels was charged with notice that those juvenile adjudications could later be used for sentencing under federal law. He therefore cannot argue that his due process rights were violated, and we do not reach the point.

## II

■ Daniels argues that the district court erred in refusing to order specific enforcement of an alleged informal plea agreement. He contends that shortly after his arrest, before counsel was appointed, he was told by Detective William Mick of the South Charleston Police Department that "if [he] cooperated in capturing his other codefendants and clearing this matter up, that they would see that he got a lot less time or something to that effect." J.A. 45. In his testimony Detective Mick confirmed generally that he had the conversation, but as to its substance he testified that he told Daniels that if Daniels would cooperate with law enforcement agents, they would "advise the authorities of the extent of [Daniels'] cooperation." J.A. 28. Daniels thereafter assisted enforcement

authorities in apprehending one of his colleagues from New York by making telephone calls to him about his forthcoming trip to Charleston.

Over two months later, on November 3, 1989, Daniels, with the advice of counsel, signed a written plea agreement with the United States. Under the terms of the agreement, Daniels agreed to plead guilty to count four of the indictment and to be completely forthright and truthful when questioned by law enforcement authorities. The government agreed to dismiss the remaining three counts of the indictment. In the agreement the government also advised Daniels that his period of imprisonment would be not less than 10 years and not more than life. At the Rule 11 hearing before the district court, Daniels and his attorney agreed that the plea agreement was the entire agreement between him and the United States and that there were no others. Daniels confirmed this under oath.

Notwithstanding the written plea agreement, at sentencing, Daniels requested that the district court order the government to file a motion for a downward departure for substantial assistance under U.S.S.G. § 5K1.1. The court denied the motion stating:

It [the plea agreement] is entered into under date of November 3, 1989. You were present in court with your client at the time the Rule 11 hearing was conducted. One of the questions that I invariably ask of each defendant who comes before me with a proposed plea of guilty under a plea agreement is whether or not that agreement which has been read at that very hearing is the entire agreement between the defendant and the United States. Mr. Daniels' answer was yes. And then as a precaution, he was asked the further question, are there any side agreements of any kind, and his answer was no. It seems to me that that completely covers the point. The plea agreement is that which is set forth in the letter agreement of November 3, 1989, and I see no reason to vary from it. That agreement does not contain a requirement on the part of the government to do what you suggest in your motion.

And, as a consequence, the court denies the motion.

J.A. 51. In these circumstances, the district court's refusal to disregard the written plea agreement and to enforce an alleged informal promise by the police officer "to advise authorities of defendant's cooperation" as a promise to file a motion for a downward departure was not clearly erroneous. *See Anderson v. Bessemer City*, 470 U.S. 564, 573–76, 105 S.Ct. 1504, 1511–13, 84 L.Ed.2d 518 (1985).

We note, in addition, that at no time did the United States promise to file a motion for a downward departure based on the substantial assistance of the defendant, an observation with which counsel for Daniels agreed at the Rule 11 hearing. J.A. 45. In the absence of an agreement requiring the government to file the motion, the defendant has no right to demand that one be filed. Moreover, in these circumstances, the court would have no right to demand, and the government would be under no obligation to offer, any explanation why the government made the prosecutorial decision not to file the motion.

For the foregoing reasons, the challenges raised on appeal by Daniels to his sentence are rejected and his sentence is affirmed.

AFFIRMED.