**UNITED STATES of America, Appellee,**

v.

**Antonio DAVIS, Appellant.**

**No. 90–1755.**

United States Court of Appeals,
Third Circuit.

Argued Feb. 26, 1991.

Decided April 2, 1991.

Mary E. Crawley (argued), Office of U.S. Atty., Philadelphia, Pa., for appellee.

Bradley Bridge (argued), Defender Ass'n of Philadelphia, Philadelphia, Pa., for appellant.

Before STAPLETON, ALITO and SEITZ, Circuit Judges.

## OPINION OF THE COURT

ALITO, Circuit Judge.

Antonio Davis appeals from a final judgment of sentence and challenges the sentence imposed under the Federal Sentencing Guidelines. Based on concessions made by the United States at oral argument, we will vacate the sentence imposed by the district court and remand for further proceedings.

### I.

Davis was indicted in March 1990 in the Eastern District of Pennsylvania for two counts of distribution of cocaine, 21 U.S.C. § 841(a)(1), and one count of possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1). Davis pled guilty to the two distribution counts under a plea agreement calling for dismissal of the possession count.

Davis's presentence report calculated his total offense level as 30, a calculation that Davis does not contest on appeal. The presentence report concluded that Davis should be awarded eight criminal history points and that his criminal history category should accordingly be category IV. This computation was based on the following three juvenile adjudications in 1987 and 1988. First, according to the presentence report, Davis was charged on February 20, 1987, in Philadelphia Family Court with theft of an automobile, receiving stolen goods, conspiracy, and criminal mischief. On July 13, 1987, the presentence report states, Davis was sentenced by Judge Summers to an indeterminate term of custody at the Glen Mills School for Juveniles.

Second, according to the presentence report, Davis was charged on March 3, 1987, with theft of an automobile, receiving stolen property, and conspiracy. The report states that following the transfer of this

case from Montgomery County, Pennsylvania, where Davis was arrested, to the Philadelphia Family Court, Davis was sentenced on March 14, 1988, by Judge O'Neill to an indeterminate term at the Glen Mills School.

Finally, according to the report, Davis was charged, on April 22, 1987, in Philadelphia Family Court with possession and sale of dangerous drugs and conspiracy. The report states that Davis was sentenced on July 28, 1987, by Judge Reynolds to an indeterminate term at the Glen Mills School. The presentence report states that Davis was discharged from the Glen Mills School on August 15, 1988.

For each of these juvenile adjudications, the presentence report assigned two criminal history points, citing Section 4A1.2(d)(2) of the Guidelines, which provides for the addition of two points "for each adult or juvenile sentence to confinement of at least 60 days if the defendant was released from such confinement within five years of his commencement of the instant offense." The presentence report also assigned two additional points under Section 4A1.1(e) on the ground that Davis had committed the instant offenses less than two years after his release from imprisonment for the offenses previously noted. Based upon an offense level of 30 and a criminal history category of IV, the presentence report calculated the Guideline range to be 135 to 168 months of imprisonment. The district court accepted this calculation, denied Davis's request for a downward departure, and imposed the minimum sentence within the guideline range, 135 months. This appeal followed.

## II.

We first consider Davis's argument that the district court erred in assigning two criminal history points for each of his juvenile adjudications under Section 4A1.2(d)(2)(A), which applies only to "adult or juvenile sentence[s] to confinement of at least sixty days." Davis contends that this section pertains only to determinate sentences and that therefore his indeterminate

sentences should not have been counted. We disagree with this interpretation.

Section 4A1.2(d)(2)(A) must be read together with other closely related provisions that assign criminal history points based on the length of the sentence for a prior conviction. Under Section 4A1.1(a) and (b), which apply to offenses committed by someone age 18 or older, three points are assigned for each "sentence of imprisonment" for more than one year and one month, and two points are assigned for each "sentence of imprisonment" of at least 60 days. Similarly, under Section 4A1.2(d)(1) and (2), which apply to offenses committed prior to age 18, three points are assigned for an adult "sentence of imprisonment" for more than one year and one month, and two points may be assigned for each "adult or juvenile sentence to confinement" of at least 60 days.

While all of these provisions are cast in the same basic pattern, they contain slight differences in terminology. On the one hand, Section 4A1.1(a) and (b) and Section 4A1.2(d)(1) use the phrase "sentence of imprisonment," which is defined by Section 4A1.2(b)(1) to mean "the maximum sentence imposed." See also Section 4A1.2, application note 2 ("[C]riminal History points are based on the sentence pronounced, not the length of time actually served.") The slightly different term employed in Section 4A1.2(d)(2)—"sentence to confinement"—is not defined, but we conclude, based upon the close relationship between Section 4A1.2(d)(2) and the other provisions noted above, that the same definition was meant to apply.

As previously noted, Section 4A1.2(d)(2) and the other provisions discussed above all assign criminal history points based on the length of the sentence for a prior conviction or adjudication. There is no apparent reason why the Sentencing Commission would have wanted to use one standard ("the maximum sentence imposed") to measure the length of a sentence under Sections 4A1.1(a) and (b) and Section 4A1.2(d)(1) and another measure under Section 4A1.2(d)(2).

If Section 4A1.2(d)(2) applied exclusively to juvenile adjudications, it could be argued that the Commission selected different methods for measuring juvenile and adult sentences. But Section 4A1.2(d)(2) also applies to some adult convictions, i.e., adult convictions for offenses committed before age 18 that result in sentences of confinement of at least 60 days. We can think of no reason why the Commission might have wanted to measure the length of such adult sentences using a different method from that employed in measuring adult sentences under all of the other closely related provisions. Thus, we conclude that the term "sentence to confinement" in Section 4A1.2(d)(2) has the same meaning as the term "sentence of imprisonment" in the other provisions. In all likelihood, the Commission used the term "confinement" rather than "imprisonment" in Section 4A1.2(d)(2) simply because that provision applies to juvenile adjudications, as well as some adult adjudications, and the term "imprisonment" is not customarily used when referring to juvenile adjudications.

Based on this analysis, each of Davis's prior juvenile adjudications qualifies for two criminal history points under Section 4A1.2(d)(2) because in each case "the maximum sentence imposed" was at least 60 days. Davis was sentenced under the Pennsylvania Juvenile Act, 42 PA.CONS. STAT.ANN. § 6353(a) (Purdon Supp.1990). That Act provides that a juvenile may be committed to an institution for a period that may not exceed either four years or the maximum adult sentence for the of-

fense. With respect to Davis's prior adjudications, the maximum adult sentence for each principal offense was greater than 60 days. Therefore, the "maximum sentence imposed" for each of Davis's juvenile adjudications was at least 60 days, and two criminal history points were properly assigned for each juvenile adjudication under Section 4A1.2(d)(2).[1]

■ Davis contends that this methodology may overvalue the severity of prior juvenile adjudications because the length of a juvenile commitment is often based, not solely on the nature of the offense, but on other factors such as the length of available juvenile treatment programs, the juvenile's need for training or rehabilitation, and the lack of a suitable home environment to which the juvenile may be returned. The Guidelines, however, provide a method for dealing with cases in which the standard criminal history calculation overvalues or undervalues the seriousness of a defendant's past criminal conduct. Under Section 4A1.3, a court may depart from the Guideline range "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct." We believe that this provision authorizes a court to grant a downward departure if a court concludes that a prior juvenile adjudication resulted in a "sentence to confinement" of sixty days or more, not because of the severity of the offense, but solely because of factors such as those cited by Davis.[2]

1. Although not relied upon as a source of authority, we note that our analysis is consistent with the Sentencing Commission's Supplementary Illustrations of Operation of Sentencing Guidelines for Multiple Counts and Criminal History. Criminal History Example F.2 provides:

    The instant offense (a robbery) was committed on 12–6–87. The defendant's criminal history follows. On 7–1–82, the defendant (age 15) was charged in juvenile court with delinquency (robbery). On 8–9–82, the defendant was adjudged delinquent and committed to the state training school for boys for a term of confinement not to exceed eighteen months. He was released to aftercare (juvenile parole) on 3–7–83.

Two criminal history points are assigned under § 4A1.1(b) because the defendant committed the offense prior to age eighteen. *See* § 4A1.2(d)(2)(A). The sentence is counted because the defendant was released from confinement within five years of his commission of the instant offense. *See* § 4A1.2(d)(2)(A). Had an adult sentence of the same length (eighteen months) been imposed, three points rather than two points would have been assigned under § 4A1.1(a) and the applicable time period would have been fifteen rather than five years. *See* § 4A1.2(d)(1).

2. This analysis is equally applicable to Davis's contention that the assignment of two criminal history points for each indeterminate sentence imposed in juvenile court would violate the con-

Davis contends that the sentencing court did not recognize the availability of a departure on this basis. We do not believe, however, that it is necessary for us to parse the colloquy at the sentencing proceeding to determine whether the defendant ever sought a downward departure on this precise ground or whether the sentencing judge recognized the possibility of such a departure. Nor is it necessary for us to decide at this time whether such a departure would be warranted in this case based upon the nature of the offenses that resulted in Davis's juvenile adjudications. Because this case must be remanded for sentencing for the reasons discussed below, Davis will have the opportunity to present these arguments to the sentencing judge.

### III.

■ Davis contends that one of his prior juvenile adjudications—i.e., the adjudication for which he was sentenced by Judge O'Neill on March 14, 1988—is constitutionally infirm because the record of that proceeding does not establish that his guilty plea was voluntary. At oral argument, the government conceded that this adjudication was infirm and that it should not have been counted in calculating the defendant's criminal history category. Accordingly, Davis must be resentenced.

### IV.

■ Finally, Davis argues that his two constitutionally valid juvenile adjudications should have been merged for purposes of calculating his criminal history category because those cases were "consolidated for disposition" (Brief at 27) and were therefore "related" under Section 4A1.2(a)(2). That provision states that "[p]rior sentences imposed in related cases are to be treated as one sentence for purposes of the criminal history." The Commentary explains (Section 4A1.2, Application Note 3) (emphasis added):

Cases are considered related if they (1) occurred on a single occasion, (2) were part of a single common scheme or plan, or (3) were *consolidated for trial or sentencing.*

Under this definition, cases may not be treated as related simply because concurrent sentences were imposed. *United States v. Davis,* 922 F.2d 1385, 1390–91 (9th Cir.1991); *United States v. Paulk,* 917 F.2d 879, 884 (5th Cir.1990); *United States v. Smith,* 905 F.2d 1296, 1303 (9th Cir. 1990); *United States v. Jones,* 898 F.2d 1461, 1463–64 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 111, 112 L.Ed.2d 81 (1990); *United States v. Metcalf,* 898 F.2d 43, 46 (5th Cir.1990); *United States v. Flores,* 875 F.2d 1110, 1114 (5th Cir.1989).

In the present case, it is unclear whether Davis's two constitutionally valid juvenile adjudications simply resulted in concurrent sentences or whether they were actually consolidated for sentencing. As previously noted, the presentence report indicated that concurrent sentences were imposed by two different judges on two different occasions. Specifically, the report indicated that on July 13, 1987, Judge Summers sentenced Davis for the first of these offenses to an indeterminate term of confinement and that on July 28 Judge Reynolds sentenced Davis for the second of these offenses to what was essentially a concurrent indeterminate term of confinement. The defendant's sentencing memorandum recounted exactly the same sequence of events (App. 16a).

At the sentencing hearing, however, defense counsel provided the following account which may or may not differ in substance from the presentence report (App. at 55a–56a) (emphasis added):

On the 13th of July, Judge Summers ... *committed Mr. Davis to [Glen Mills], but deferred disposition and transferred disposition ... to a hearing in*

stitutional guarantees of due process and equal protection. Asserting that an indeterminate juvenile sentence may not reflect the seriousness of a juvenile's offense, Davis contends that the guidelines are unconstitutional if they treat "a juvenile disposition precisely like an adult sen-

tence." However, because downward departure is available to remedy cases where a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history, the factual predicate of Davis's constitutional argument is clearly unsound.

*front of Judge Reynolds* on the 28th of July, 1987.... [O]n the 28th of July, 1987, Judge Reynolds ordered that Mr. Davis remain, as committed, to [Glen Mills].

On appeal, Davis's brief asserted that the following sequence of events occurred (Brief at 26–27 (emphasis added)):

> On July 13, 1987 Judge Edward Summers adjudicated Mr. Davis delinquent *but did not decide what to do with him.... Judge Summers transferred disposition of that case to Judge Abram Frank Reynolds,* who had heard one of the other cases, and on July 28, 1987 Judge Reynolds ordered Davis committed to Glen Mills on both cases.

At oral argument before us, the government urged that the case be remanded so that the precise sequence of events may be established. In order to ensure that the defendant's sentence is based upon accurate information, we will follow that course.[3]

### IV.

We will vacate the sentence imposed by the district court and remand for further proceedings in accordance with this opinion.

---

3. The facts relating to Davis's valid juvenile adjudications have not yet been established, and therefore we do not address the application of Section 4A1.2(a)(2) to what are at present hypothetical factual situations. Consequently, we express no view on the question whether consolidation for sentencing requires a formal procedure under the rules of the relevant jurisdiction. Nor do we express a view regarding the correctness of the passage in the Commentary stating that consolidation for sentencing is sufficient to render cases "related" under Section 4A1.-2(d)(2). Compare *United States v. Delvecchio,* 920 F.2d 810, 812–13 (11th Cir.1991) (passage valid); *United States v. Metcalf,* 898 F.2d 43, 46 n. 6 (5th Cir.1990) (passage valid), with *United States v. Gross,* 897 F.2d 414, 416 (9th Cir.1990) (passage invalid); *United States v. Davis,* 922 F.2d 1385, 1391 (9th Cir.1991) (applying *Gross*).